UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-80526-CIV-COHN/SELTZER

ROBERT TOBACK, on behalf of himself and
all others similarly situated,

    Plaintiff,

v.

GNC HOLDINGS, INC., GNC
CORPORATION, GENERAL NUTRITION
CORPORATION, and GENERAL NUTRITION
CENTERS, INC.,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss Plaintiff's Complaint [DE 14] ("Motion"). The Court has carefully considered the Motion, Plaintiff's Opposition [DE 18], Defendants' Reply [DE 27], and Plaintiff's two Notices of Supplemental Authority [DE 30 & 34], and is otherwise fully advised in the premises.

### I.      BACKGROUND

Plaintiff Robert Toback ("Plaintiff") filed a class action complaint against Defendants GNC Holdings, Inc., GNC Corporation, General Nutrition Corporation, and General Nutrition Centers, Inc. ("Defendants") on May 22, 2013. See Compl. [DE 1]. The Complaint concerns the sale of Defendants' "TriFlex" line of products, which Defendants advertise as promoting joint health and function. Id. ¶ 25. Plaintiff alleges that the TriFlex products do not in fact promote joint health and function. Id. ¶ 46. Plaintiff cites numerous studies allegedly demonstrating that two common ingredients of the TriFlex products, glucosamine and chondroitin, are ineffective for such a purpose.

Id. ¶ 29. Plaintiff alleges that Defendants "knew, or should have known, that the representations that their TriFlex products help repair, regenerate, maintain, preserve, replace, renew, or rebuild cartilage were untrue." Id. ¶ 46. More specifically, Plaintiff states that he purchased a TriFlex product called TriFlex Vitapak. Id. ¶ 34. Plaintiff alleges that the TriFlex Vitapak did not help to repair or preserve his cartilage, and that he was harmed as a result. Id. ¶¶ 34-35, 48. Plaintiff, on his own behalf and on behalf of similarly situated Florida consumers, brings a single cause of action against Defendants for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"). See Fla. Stat. §§ 501.201-.213. Defendants have moved to dismiss.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court shall grant a motion to dismiss where the factual allegations of the complaint cannot support the asserted cause of action. Glover v. Liggett Grp., Inc., 459 F.3d 1304, 1308 (11th Cir. 2006). "Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). Thus, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Nonetheless, a complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 550 U.S. at 555. A complaint should not be dismissed simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. Id. Accordingly, a well pleaded complaint will survive a motion to dismiss

2

"even if it appears that a recovery is very remote and unlikely." Id. at 556 (internal quotation marks omitted).

### III. ANALYSIS

In their Motion, Defendants argue that this Court should dismiss the Complaint for the following reasons: (1) the Complaint does not meet Federal Rule of Civil Procedure 9(b)'s heightened pleading standard for fraud; (2) the Complaint does not allege falsity but only lack of substantiation, which cannot support a claim for violation of FDUTPA; (3) studies cited by Plaintiff do not contradict the represented health benefits of TriFlex products; (4) Plaintiff does not have standing to bring claims relating to products other than the TriFlex Vitapak; and (5) Plaintiff only alleges that two of the many ingredients of the TriFlex Vitapak are ineffective for their represented purpose. The Court will address each argument in turn.

### A. Plaintiff Need Not Plead with Particularity

Defendants argue throughout their Motion that the Complaint is deficient because it does not comport with the particularity requirements of Federal Rule of Civil Procedure 9(b). However, "[t]he requirements of Rule 9(b) do not apply to claims under the FDUTPA." Galstaldi v. Sunvest Cmties. USA, LLC, 637 F. Supp. 2d 1045, 1058 (S.D. Fla. 2009). Rule 9(b)'s requirements are implicated by allegations of fraud, but because FDUTPA was enacted to provide remedies for conduct outside the reach of traditional common law torts like fraud, "the plaintiff need not prove the elements of fraud to sustain an action under the statute." Id. (quoting Florida v. Tenet Healthcare Corp., 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005)). Accordingly, failure to meet the heightened pleading requirements of Rule 9(b) cannot serve as a basis to dismiss FDUTPA claims. Id.; see also Office of A.G., Dep't of Legal Affairs v. Wyndham Int'l,

3

Inc., 869 So. 2d 592, 598 (Fla. 1st D.C.A. 2004) ("A deceptive or unfair trade practice constitutes a somewhat unique tortious act because, although it is similar to a claim of fraud, it is different in that, unlike fraud, a party asserting a deceptive trade practice claim need not show actual reliance on the representation or omission at issue.").[1]

In finding that Rule 9(b) is inapplicable here, the Court rejects Defendants' contention that Plaintiff's reference to Defendants collectively as "GNC" throughout the Complaint is group pleading that requires dismissal. Defendants argue that Rule 9(b) requires Plaintiff to allege separately which deceptive acts Plaintiff attributes to each Defendant. See Motion at 18-19. Federal Rule of Civil Procedure 8, however, which provides the applicable pleading standard, only requires a short, plain statement of each claim that gives the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Though Plaintiff refers to Defendants collectively as "GNC," he has alleged sufficient factual detail to put Defendants on notice of the nature of the claims against them, satisfying the requirements of Rule 8. See, e.g., Frazier v. U.S. Bank Nat'l Ass'n,

---

[1] The Court acknowledges that other courts within this district have reached the opposite result. See, e.g., Llado-Carreno v. Guidant Corp., No. 09-20971, 2011 U.S. Dist. LEXIS 17088, at *14-15 (S.D. Fla. Feb. 22, 2011) (finding Rule 9(b) does apply to FDUTPA claims). However, this Court has previously held that Rule 9(b) does not apply to FDUTPA claims and the Court is not persuaded that it should reconsider this position. See Costa v. Kerzner Int'l. Resorts, Inc., No. 11-60663, 2011 U.S. Dist. LEXIS 66921, at *6-7 (S.D. Fla. June 23, 2011).

Defendants also rely heavily on this Court's opinion in Jovine v. Abbott Laboratories, Inc., 795 F. Supp. 2d 1331 (S.D. Fla. 2011), in arguing that specificity is required in pleading a FDUTPA claim. See Motion at 15. The Court's discussion of Rule 9(b) in Jovine, however, referred to whether the plaintiff's vague allegations of "fraudulent conduct" in relation to a defendant's sale of allegedly unsafe infant formula supported a claim for relief, as opposed to pleading standards under FDUTPA relating to misrepresentative advertising. See Jovine, 795 F. Supp. 2d at 1343 n.9.

4

No. 11-8775, 2013 U.S. Dist. LEXIS 45330, at *10-12 (N.D. Ill. Mar. 29, 2013) (holding that group pleading did not render complaint infirm under Rule 8 where complaint provided fair notice of claims); FTC v. Sterling Precious Metals, LLC, No. 12-80597, 2013 U.S. Dist. LEXIS 20879, at *11-12 (S.D. Fla. Feb. 14, 2013) (rejecting motion seeking dismissal based upon group pleading). Indeed, Defendants have demonstrated their understanding of the Complaint's allegations against them in a brief discussion in their Reply of the interrelated corporate Defendants' roles with regard to the distribution of TriFlex products. Reply at 10.

Similarly, the Court rejects Defendants' argument that Plaintiff's failure to plead causation with specificity requires dismissal. Defendants argue that Plaintiff has failed to plead which representations regarding the health benefits of TriFlex he was exposed to, in addition to when and where that exposure occurred, and thus he has failed to plead the element of causation with the requisite specificity. Motion at 14-15. As discussed above, no such specificity is required of Plaintiff in pleading a claim under FDUTPA.

Florida's state courts have not defined a clear causation standard under FDUTPA. See Gavron v. Weather Shield Mfg., Inc., 819 F. Supp. 2d 1297, 1301 (S.D. Fla. 2011) (discussing "discordant decisions" in Florida courts regarding causation element). Nevertheless, the Eleventh Circuit has held that the element of causation is met when the alleged misrepresentations would have deceived an objectively reasonable person. Fitzpatrick v. Gen. Mills, Inc., 635 F.3d 1279, 1283 (11th Cir. 2011). Because Plaintiff has pleaded facts suggesting that the representations at issue would have deceived reasonable consumers (see Compl. ¶¶ 17, 32-35, 45), he has sufficiently

alleged causation. See Gavron, 819 F. Supp. 2d at 1301 (finding causation adequately pleaded when plaintiff alleged that misrepresentations would have deceived objectively reasonable person); see also Nelson v. Mead Johnson Nutrition Co., 270 F.R.D. 689, 692 & n.2 (S.D. Fla. 2010) (noting that deceptive marketing may injure consumers even without individual reliance upon misrepresentations where misrepresentations result in higher prices).

### B. Plaintiff Alleges More than Lack of Substantiation

Defendants characterize the Complaint as alleging that no scientific studies substantiate Defendants' representations regarding the TriFlex line. Motion at 7-8. Defendants argue that a plaintiff alleging a FDUTPA violation must plead that the representations at issue were affirmatively false and misleading, and not merely unsubstantiated. Id. at 7. Defendants thus argue that Plaintiff's claim must fail. Id. at 7-8.

Though some states' consumer fraud statutes do not recognize a cause of action for lack of substantiation, it is unclear that such a claim is unavailable under FDUTPA. In re Horizon Organic Milk Plus DHA Omega-3 Mktg. & Sales Practice Litig., No. 12-02324, 2013 U.S. Dist. LEXIS 105830, at *79 n.12 (S.D. Fla. July 24, 2013). Plaintiff's Complaint, however, does more than merely allege that Defendants' representations were unsubstantiated. Plaintiff affirmatively alleges that studies have shown glucosamine and chondroitin, two ingredients of the TriFlex products, to be ineffective in promoting joint health. Compl. ¶ 29. For example, Plaintiff alleges that one cited study "conclusively prov[ed] that the ingestion of glucosamine could not affect the growth of cartilage," and another article found that "there was 'little or no evidence' to suggest that glucosamine was superior to a placebo even in slowing down cartilage

6

deterioration." Id. In other words, Plaintiff goes further than alleging that Defendants have failed to substantiate their representations with scientific evidence, but instead alleges that scientific evidence exists to contradict Defendants' representations and demonstrate their falsity. See Eckler v. Wal-Mart Stores, Inc., No. 12-727, 2012 U.S. Dist. LEXIS 157132, at *4-11 (S.D. Cal. Oct. 31, 2012) (distinguishing between "unsubstantiated" representations lacking support and representations that are contradicted). The Court thus finds that the Complaint does not fail for alleging mere lack of substantiation.

### C. The Complaint Alleges TriFlex Is Ineffective with Respect to the Stated Benefits

Defendants argue that the studies Plaintiff cites in his Complaint only address the impact of glucosamine or chondroitin on the disease osteoarthritis. Motion at 10-11. Defendants contend they did not represent that TriFlex products were intended for treatment of any disease such as osteoarthritis, and instead represented that the products would only improve joint comfort, flexibility, or function. Id. Defendants thus argue that Plaintiff's studies are inapposite and cannot raise the Complaint's allegations of misrepresentation above the speculative level. Id. Defendants' argument is incorrect as a factual matter, because Plaintiff has referenced in his Complaint not only studies suggesting the inefficacy of glucosamine or chondroitin in treating osteoarthritis, but also studies and articles addressing the inefficacy of ingested glucosamine or chondroitin with relevance to broader joint health and function. See Compl. ¶ 29 (citing Jeremiah E. Silbert, Dietary Glucosamine Under Question, 19 Glycobiology 564 (2009);

S.G. Kirkham & R.K. Samarasinghe, Glucosamine, 17 J. Orthopaedic Surgery 72 (2009)).[2]

### D. **Plaintiff's Standing Is Limited to Claims Regarding the TriFlex Vitapak**

Defendants argue that, because Plaintiff only alleges that he purchased the TriFlex Vitapak, Plaintiff lacks standing to pursue claims with respect to other products in the TriFlex product line. Motion at 16-17. Defendants correctly note that many federal courts have dismissed consumer protection claims in class action complaints based upon products the class representative did not purchase. See, e.g., Pearson v. Target Corp., No. 11-7972, 2012 U.S. Dist. LEXIS 187208, at *3-4 (N.D. Ill. Nov. 9, 2012) (dismissing claims relating to certain glucosamine and chondroitin products in line not purchased by class representative). A similarly large number of federal courts, however, have held that whether a class representative has standing to maintain a consumer class action relating to an entire product line, despite having only purchased a subset of those products, is a question more appropriate for resolution at the class-certification stage. See, e.g., Cardenas v. NBTY, Inc., 870 F. Supp. 2d 984, 991-92 (E.D. Cal. 2012) (deferring until class-certification stage determination of whether class representative could present claims based upon products he did not buy).

Some courts have discussed the issue in terms of Article III standing—properly the subject of a motion to dismiss—as compared with class standing to be determined

---

[2] Defendants also contest Plaintiff's reading of the cited studies. Motion at 12. This disagreement over interpretation of research, however, is a factual issue inappropriate for resolution on a motion to dismiss, see In re Horizon Organic Milk, 2013 U.S. Dist. LEXIS 105830, at *6 n.1 (taking plaintiffs' contentions regarding study findings as true at motion to dismiss stage), where all reasonable factual inferences must be drawn in favor of the plaintiff. See Twombly, 550 U.S. at 555.

at the class-certification stage.  See In re Frito-Lay N. Am., Inc., No. 12-2413, 2013 U.S. Dist. LEXIS 123824, at *34-42 (E.D.N.Y. Aug. 29, 2013).  In allowing named plaintiffs to maintain a consumer class action involving products they did not purchase, the court in In re Frito-Lay North America, Inc. drew upon decisions of the Second Circuit holding that Article III standing may not be strictly required of each claim, and class standing may be established during the class-certification stage as long as there is at least one named plaintiff with Article III standing to assert *some* claim against each defendant.  Id. at *34-35.  By way of contrast, the law in the Eleventh Circuit is clear that at least one named plaintiff must establish Article III standing for each class subclaim.  Prado-Steiman v. Bush, 221 F.3d 1266, 1279-80 (11th Cir. 2000).  In other words, Article III standing of a named plaintiff must be established on a claim-by-claim basis within the Eleventh Circuit, and deferring the standing determination to the class-certification stage will yield no different result.

The Article III standing analysis requires a plaintiff to demonstrate that he has suffered an injury-in-fact.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  Because Plaintiff alleges that he purchased the TriFlex Vitapak, but not other TriFlex products, he has failed to plead that he suffered any injury with regard to products other than the TriFlex Vitapak.  See Guerrero v. Target Corp , 889 F. Supp. 2d 1348, 1353-54 (S.D. Fla. 2012) (standing satisfied for FDUTPA claim where plaintiff purchased product forming basis of claim).  Plaintiff therefore cannot establish his Article III standing with respect to any product other than the Vitapak, see Lujan, 504 U.S. at 560-61, and cannot raise claims relating to those other products which he did not purchase,

see Prado-Steiman, 221 F.3d at 1279-80. The claims Plaintiff has standing to bring are therefore limited to those relating to the TriFlex Vitapak.

### E. The Complaint Fails to Raise Allegations Regarding the TriFlex Vitapak Above the Speculative Level

Finally, Defendants argue that Plaintiff has failed to plead a claim for violations of FDUTPA because Plaintiff only alleges that two discrete components of the TriFlex Vitapak—glucosamine and chondroitin—are ineffective in promoting joint health and function. Motion at 9. Defendants argue that the Complaint does not address a host of other components of the TriFlex Vitapak that Defendants contend contribute to the efficacy of the product. Id. at 9-10. Because of the disconnect between the substances Plaintiff claims are ineffective and the substances contained within the TriFlex Vitapak, Defendants argue that the facts as pleaded fail to support an inference that the Vitapak is ineffective for its represented purpose. Id. Plaintiff responds that the "alchemy of adding some other ingredients to the glucosamine and chondroitin" in TriFlex products will not "miraculously" render the products effective. Opp'n at 13 n.3. Plaintiff states that he also knows the Vitapak to be ineffective because he ingested the Vitapak and "it did not improve his condition." Id. at 16-17.

The breadth of ingredients in the TriFlex Vitapak contrasted with the Complaint's laser-like focus on the shortcomings of glucosanmine and chondroitin poses a problem for Plaintiff. In addition to glucosamine and chondroitin, the TriFlex Vitapak includes cutch tree extract, Chinese skullcap root extract, methylsulfonyl-methane, white willow bark extract, fish oil, and other substances. Motion Ex. 1.[3] By Plaintiff's own admission,

---

[3] The Court may refer to the label of the TriFlex Vitapak attached as an exhibit to the Motion, as the label is referenced in the Complaint and is central to Plaintiff's claim.

Defendants market this product not merely as a glucosamine and chondroitin supplement, but as a "[c]omprehensive Vitapak program that supports [i]mproved joint health." Compl. ¶ 25. Plaintiff's allegations regarding the inefficacy of glucosamine and chondroitin simply fail to address the efficacy of the TriFlex Vitapak's multifarious composition in promoting joint health, and thus fail to raise Plaintiff's claim, that the Vitapak as a whole does not function as advertised, above the speculative level. See Eckler, 2012 U.S. Dist. LEXIS 157132, at *23-24 (dismissing claim for false advertising relating to glucosamine supplements where studies relied upon by plaintiff to allege inefficacy of glucosamine did not address broader formulation of supplements at issue).

Plaintiff's claim is not salvaged by his conclusory allegation that the Vitapak "did not help repair or preserve" his cartilage. See Compl. ¶ 35. Though a plaintiff's factual allegations must be taken as true on a motion to dismiss, a court need not give credence to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 556 U.S. at 678. Plaintiff's allegation that the Vitapak did not repair his cartilage, or in other words that it did not function as advertised, is devoid of any further detail or support. The Complaint does not discuss why Plaintiff believes the product he consumed did not repair his cartilage or otherwise elaborate upon the allegation. Without more, Plaintiff's bare assertion that the Vitapak did not function as advertised is merely a "legal conclusion couched as a factual allegation," Twombly, 550 U.S. at 555, which this Court is not bound to accept as true.

---

See Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).

See Arroyo v. Pfizer, Inc., No. 12-4030, 2013 U.S. Dist. LEXIS 13789, at *11-16 (N.D. Cal. Jan. 31, 2013) (rejecting as conclusory plaintiff's allegations that dietary supplement "does not support healthy immune function" as advertised, because plaintiff failed to plead any underlying factual support); Eckler, 2012 U.S. Dist. LEXIS 157132, at *7 n.2 (finding speculative plaintiff's conclusory allegation that the glucosamine product at issue "did not rebuild her cartilage, lubricate her joints or improve her joint comfort as represented").

Plaintiff has therefore failed to raise his allegation that the TriFlex Vitapak is ineffective for its advertised purpose above the speculative level. Because Plaintiff's allegations regarding the falsity of Defendants' representations relating to the TriFlex Vitapak fail to satisfy the applicable pleading standard of Twombly, 550 U.S. at 555, and because Plaintiff lacks standing to pursue claims relating to any TriFlex product other than the Vitapak, Plaintiff has failed to state a claim under FDUTPA.

### IV. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendants' Motion to Dismiss Plaintiff's Complaint [DE 14] is **GRANTED**;

2. The Complaint [DE 1] is **DISMISSED without prejudice**; and

3. Plaintiff may file an amended complaint on or before **September 27, 2013**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 13th day of September, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF